UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JAMES JACKSON,            )<br>                                        )<br>        Plaintiff,             )<br>                                        )<br>    v.                            )<br>                                        )<br>OFFICER A. RELLIO, MUNSTER )<br>POLICE DEPARTMENT, AND   )<br>TOWN OF MUNSTER,          )<br>                                        )<br>        Defendants.          ) | Case No. 2:21-cv-76 |

**OPINION AND ORDER**

This matter is before the court on the Motion for Summary Judgment [DE 108] filed by the defendants, Alexander Reillo, Munster Police Department, and the Town of Munster, on October 23, 2023. For the following reasons, the Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.

*Background*

The plaintiff, James Jackson, proceeding pro se, initiated this lawsuit on March 3, 2021, alleging that the defendants, Police Officer Alexander Reillo, Munster Police Department, and the Town of Munster (collectively "the defendants"), violated his constitutional rights during a traffic stop in March 2019. In summary, Jackson's complaint alleges that Officer Reillo unlawfully stopped and searched his vehicle and person in violation of his constitutional rights under the Fourth and Fourteenth Amendments; alleges a *Monell* claim against the Munster Police Department and Town of Munster pursuant to **42 U.S.C. § 1983**; claims that the defendants violated his rights under the Indiana Constitution; and alleges a negligence claim against all the defendants. [DE 1].

On October 23, 2023, the defendants filed the instant Motion for Summary Judgment [DE 108]. Jackson responded on November 27, 2023 [DE 38], and on December 1, 2023, the defendants filed their reply [DE 120].

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment. As a result, this court has jurisdiction to decide this case pursuant to **28 U.S.C. § 636(c)**.[1]

### *Material Facts*

On March 15, 2019, Officer Reillo of the Munster Police Department observed a silver sedan on I-65 following a semi-tractor "by no more than [one] car length." [DE 110; Dft. Ex. A]. After catching up with the vehicle, Officer Reillo observed "an object hanging from the rear-view mirror" which he believed obstructed the driver's view. *Id.* Officer Reillo conducted a traffic stop on the vehicle and contacted the driver, identified as James Jackson. [DE 111 at ¶ 3]. Jackson disputes the legitimacy of the traffic stop and denies committing the alleged traffic infractions. [DE 118 at ¶ 2].

During the traffic stop, Officer Reillo claimed that he smelled marijuana from inside the vehicle. [DE 111 at ¶ 5]. When asked, Jackson admitted that he smoked marijuana earlier in the day and added that there were "roaches", or leftovers of a marijuana cigarette, in the vehicle. [DE 111 at ¶¶ 6, 7, 8]. After detecting the odor of marijuana and briefly speaking with Jackson, Officer Reillo searched the vehicle. [DE 111 at ¶ 11]. Officer Reillo detained Jackson and

---

[1] The parties filed their consent to the exercise of jurisdiction by a United States Magistrate Judge in August 2021. [DE 26]. At the time, the case was assigned to Magistrate Judge Joshua P. Kolar. The case was later reassigned to the undersigned when Magistrate Judge Kolar was confirmed to the 7th Circuit. Following the reassignment, the parties were notified they had thirty days within which to object to the continued exercise of jurisdiction by a Magistrate Judge [DE 124], and neither party notified the clerk's office that they had any objections.

secured him in handcuffs while conducting the search. [DE 111 at ¶ 12]. The traffic stop lasted 42 minutes and Jackson was handcuffed around 16 minutes and 50 seconds after the inception of the stop. [DE 111 at ¶¶ 14, 15].

Officer Reillo located two packets labeled Caliva 3.5 grams, two clear plastic baggies containing a green leafy substance, and a metal grinder containing a green leafy substance. [DE 111 at ¶ 16]. Officer Reillo issued Jackson a formal warning for the alleged traffic offenses and charged him with possession of marijuana in violation of I.C. 35-48-4-11(a)(1). [DE 111 at ¶¶ 18, 19].

## *Discussion*

Under **Federal Rule of Civil Procedure 56(a)**, summary judgment is proper only if the movant has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Celotex Corp. v. Catrett**, 477 U.S. 317, 322–23 (1986); **Garofalo v. Vill. of Hazel Crest**, 754 F.3d 428, 430 (7th Cir. 2014); **Kidwell v. Eisenhauer**, 679 F.3d 957, 964 (7th Cir. 2012); **Stephens v. Erickson**, 569 F.3d 779, 786 (7th Cir. 2009). A fact is material if it is outcome determinative under applicable law. The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. **Adickes v. S.H. Kress & Co.**, 398 U.S. 144, 160 (1970); **Pack v. Middlebury Comm. Sch.**, 990 F.3d 1013, 1017 (7th Cir. 2021).

When the movant has met its burden, the opposing party cannot rely solely on the allegations in the pleadings but must "point to evidence that can be put in admissible form at trial, and that, if believed by the fact-finder, could support judgment in [her] favor." **Marr v. Bank of Am., N.A.**, 662 F.3d 963, 966 (7th Cir. 2011); *see also* **Steen v. Myers**, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting **Hammel v. Eau Galle Cheese Factory**, 407 F.3d 852, 859 (7th

3

Cir. 2005) (summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.")). The non-moving party cannot rely on conclusory allegations. *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021). Failure to prove an essential element of the alleged activity will render other facts immaterial. *Celotex*, 477 U.S. at 323; *Filippo v. Lee Publications, Inc.*, 485 F. Supp. 2d 969, 972 (N.D. Ind. 2007) (the non-moving party "must do more than raise some metaphysical doubt as to the material facts; she must come forward with specific facts showing a genuine issue for trial").

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). The trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial. *Anderson*, 477 U.S. at 248; *Cung Hnin v. Toa, LLC*, 751 F.3d 499, 504 (7th Cir. 2014); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008).

The defendants argue that they are entitled to summary judgment on all claims. The defendants contend that Jackson never suffered any constitutional violations resulting from the traffic stop. According to the defendants, Officer Reillo had probable cause to conduct a traffic stop on Jackson's vehicle because he observed legitimate traffic violations. The defendants also argue that Officer Reillo had probable cause search the vehicle, so the search did not violate Jackson's Fourth Amendment rights. The Munster Police Department and Town of Munster also maintain that Jackson's *Monell* claim must also fail because he failed to establish that its policy,

4

widespread practice, or custom resulted in a violation of his constitutional rights. Finally, the defendants assert that Jackson failed to substantiate a viable claim under the Fourteenth Amendment and Indiana State law.

In response, Jackson asserts that there is a genuine dispute of material fact about whether Officer Reillo had probable cause to conduct a traffic stop, and he denies committing the alleged traffic violation. In turn, Jackson contends that Officer Reillo did not have probable cause to search his person or his vehicle and doing so violated his constitutional rights. As to his *Monell* claim, Jackson asserts that there is a question of fact of whether he was pulled over because of his race which he claims results from the Munster Police Department's lack of training on racial profiling. Finally, Jackson asserts that he has a viable negligence claim against the defendants.

### A. The Fourth Amendment Claims

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated...." **U.S. Const. amend. IV**. Individual protections provided under the Fourth Amendment extend during traffic stops, which constitute a "seizure within the meaning of this provision." ***Whren v. United States***, 517 U.S. 806, 809 (1996). Before carrying out a lawful traffic stop, police officers must have probable cause to believe a traffic violation has occurred. *Id.* at 810. Probable cause exists when "the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense." ***United States v. Cashman***, 216 F.3d 582, 586 (7th Cir. 2000).

In his probable cause affidavit, Officer Reillo claimed that he observed Jackson's vehicle "following a semi-tractor trailer by no more than [one] car length." [DE 110; Dft. Ex. A]. After catching up to the vehicle, Officer Reillo observed an object hanging from the rearview mirror

5

which he claimed "continuously swayed from left to right causing an obstruction of view to the driver." *Id.*

The Indiana Code prohibits following another vehicle "more closely than is reasonable and prudent." **I.C. § 9–21–8–14**. Whether a vehicle is following too closely behind another is a subjective analysis. "'There is no rule, other than that relating to the exercise of reasonable care, which prescribes a distance that must be maintained between vehicles while running along the highway.'" **Toenges v. Walter**, 109 Ind. App. 41, 50, 32 N.E.2d 95, 98 (1941) (quoting **Harnik v. Astoria Mahogany Co.**, 127 Misc. 41, 215 N.Y.S. 219, 220 (1926)). Officer Reillo reported that Jackson's vehicle was traveling about one car length behind a semi-tractor trailer. However, the distance between two vehicles alone, without reference to the speed being travelled, is not dispositive as to whether a driver is exercising reasonable care. It is the combination of speed and distance that is typically required to assess whether a driver is following more closely than is reasonable and prudent. *See* **United States v. Peters**, 743 F.3d 1113, 1117 (7th Cir. 2014) ("[i]f an officer knowing these facts could reasonably conclude that this combination of speed and distance violated Indiana law, that is all that is necessary to support probable cause.").

The defendants cite **United States v. Muriel**, 418 F.3d 720 (7th Cir. 2005), in support of their position that Officer Reillo had probable cause to stop Jackson's vehicle for following too closely. In **Muriel**, as in this case, a police officer pulled over a vehicle for following too closely in violation of **I.C. § 9–21–8–14**. *Id.* at 724. Yet the distance between the two vehicles in that case was contextualized by reference to speed. There, the officer provided testimony that he utilized the "two-second rule" as a measure of reasonableness of the following distance between the vehicles. *Id.* The district court also had the opportunity to review video evidence and ultimately determined that the officer's estimation of the following distance amounted to

probable cause to believe the suspect vehicle was traveling closer than is reasonable and prudent. *Id.*

Here, neither the written warning Officer Reillo gave to Jackson, nor his probable cause affidavit, addresses the speed of the two vehicles at the time he observed the distance between them. Neither party submitted dashcam footage of the traffic stop for the court to review. Thus, the court is without sufficient evidence to conclude that there is no genuine dispute of material fact that Jackson followed the semi-truck more close than is "reasonable and prudent" in violation of **I.C. § 9–21–8–14**.

Officer Reillo further alleged that Jackson had an object hanging from his rear-view mirror that obstructed his view. Under **I.C. § 9–21–8–43**, a person may not drive a vehicle when the vehicle is "loaded in a manner so as to obstruct the view of the person who drives the vehicle to the front or sides of the vehicle." The Seventh Circuit has held that objects hanging from a rear-view mirror "may (or may not) constitute material obstructions depending on their size, their position relative to the driver's line of vision, and whether they are stationary or mobile." ***United States v. Garcia-Garcia***, 633 F.3d 608, 615 (7th Cir. 2011). For example, in ***United States v. Jackson***, 962 F.3d 353 (7th Cir. 2020), the Seventh Circuit found that a tree shaped air freshener about 4.7 inches by 2.75 inches hanging from a rear-view mirror provided officers with a reasonable suspicion that the object obstructed the driver's view. Still, the Court noted that "not every object hanging from a rearview mirror necessarily obstructs a driver's clear view through the windshield" and "each case presents a different set of facts and circumstances that courts must carefully examine in light of the law alleged to have been violated." *Id.* at 359.

Here, the record merely provided that Officer Reillo observed "an object" hanging from the rear-view mirror. There is no indication of what the object was, its approximate size, or how

7

much it obstructed Jackson's view. Nor are there images in the record depicting this object for the court to examine. The court is therefore without sufficient evidence to adequately determine whether Jackson violated the law by hanging an unknown object of unknown size from the rear-view mirror. As a result, Jackson's Fourth Amendment claims related to the legitimacy of the traffic stop must survive summary judgment.

Given the court's determination that the legitimacy of the stop itself is disputed and survives summary judgment, Jackson's additional Fourth Amendment claims relating to his detention and search must also survive. If a jury concludes that the traffic stop was not justified at its inception, then the same jury also may conclude that the intrusions that followed were similarly unreasonable. In essence, the entirety of Jackson's Fourth Amendment claims rests on the lawfulness of the traffic stop, which is up for debate.

For these reasons, the defendant is not entitled to summary judgment on any of Jackson's Fourth Amendment claims.

### B.  The Monell Claim

Under § 1983 jurisprudence, a municipality is considered a "person" and thus may be held liable for a violation of § 1983.  ***Monell v. Dep't of Soc. Services***, 436 U.S. 658, 690, 98 S. Ct. 2018, (1978). "Local governing bodies ... can be sued directly under § 1983 ... where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." *Id.* at 690. "Although not authorized by written law ... practices of state officials could be so permanent and well-settled as to constitute a custom or usage with the force of law." *Id.* at 691. Essentially, a municipality is liable under § 1983 only "for its own violations of the federal

Constitution and laws." *First Midwest Bank ex rel. LaPorta v. City of Chi.*, 988 F.3d 978, 986 (7th Cir. 2021).

There are at least three types of municipal action that may give rise to municipal liability under § 1983: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.* (quoting *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019)). Next, the plaintiff must show that "the policy or custom demonstrates municipal fault," i.e., deliberate indifference. *LaPorta*, 988 F.3d at 986. If a municipality's action is not facially unconstitutional, the plaintiff "must prove that it was obvious that the municipality's action would lead to constitutional violations and that the municipality consciously disregarded those consequences." *Id.* Finally, the plaintiff must show that the municipal action was "the 'moving force' behind the federal-rights violation." *Id.* (internal citation omitted).

In support of his section 1983 claim, Jackson contends that the Munster Police Department failed to train Officer Reillo for racial profiling or implicit bias and believes he was pulled over because of his race as a result. In rebuttal, The Munster Police Department argues that Jackson failed to establish an express policy, widespread practice, or custom that led to the violation of his constitutional rights.

Besides his own subjective opinion, Jackson has introduced no substantive evidence of a pattern or practice by the Munster Police Department that either facially violates or results in the infringement of constitutional rights. Although the Seventh Circuit has "not adopted any bright-line rules for establishing what constitutes a widespread custom or practice, it is clear that a single incident—or even three incidents—do not suffice." *Wilson v. Cook Cnty.*, 742 F.3d 775,

9

780 (7th Cir. 2014). In fact, the Seventh Circuit repeatedly has rejected *Monell* claims that rest on the plaintiff's individualized experience without evidence of other constitutional violations. *See, e.g.*, *Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 567-68 (7th Cir. 2021); *Ruiz-Cortez v. City of Chicago.*, 931 F.3d 592, 599 (7th Cir. 2019); *Chatham v. Davis*, 839 F.3d 679, 685 (7th Cir. 2016); *Hahn v. Walsh*, 762 F.3d 617, 638 (7th Cir. 2014); *Calhoun v. Ramsey*, 408 F.3d 375, 381 (7th Cir. 2005); *Robles v. City of Fort Wayne*, 113 F.3d 732, 737 (7th Cir. 1997).

Jackson has not established a pattern of similar constitutional violations or a substantial risk of such violations in the future resulting from the alleged failure to provide officers training for racial profiling or implicit bias. Nor has Jackson shown sufficient facts that the Munster Police Department's action or inaction was deliberately indifferent and would lead to further constitutional violations. Therefore, Jackson's *Monell* claim against the Munster Police Department fails and it is entitled to summary judgment on this issue.

## C. *Negligence Claim under The Indiana Tort Claims Act*

Under the ITCA, a claim against a political subdivision is barred unless notice is filed with: (1) the governing body of that political subdivision and (2) the Indiana political subdivision risk management commission within one hundred eighty days after the loss occurs. **I.C. § 34–13–3–8**. "A person may not initiate a suit against a governmental entity unless the person's claim has been denied in whole or in part." **I.C. § 34–13–3–13**. The ITCA applies to suits against employees of political subdivisions as well as the subdivisions themselves. *Davidson v. Perron*, 716 N.E.2d 29, 34 (Ind. Ct. App. 1999) (citing *VanValkenburg v. Warner*, 602 N.E.2d 1046, 1048 (Ind. Ct. App. 1992).

"Compliance with the notice provisions of the ITCA is a procedural precedent which the plaintiff must prove and which the trial court must determine before trial." *Id.* (citing Indiana ***Dep't of Highways v. Hughes***, 575 N.E.2d 676, 678 (Ind. Ct. App. 1991)). Once a defendant raises failure to comply with the ITCA's notice requirements, the burden shifts to the plaintiff to prove compliance. *Id.* While the ITCA is inapplicable to § 1983 claims, ***Estate of Conner v. Ambrose***, 990 F. Supp. 606, 617 (N.D. Ind. 1997), the ITCA applies to pendent state court claims made within a § 1983 suit. ***Meury v. Eagle–Union Community Sch. Corp.***, 714 N.E.2d 233, 242 (Ind. Ct. App. 1999). A governmental entity's immunity from liability under the ITCA is a question of law for the court. ***City of Anderson v. Davis***, 743 N.E.2d 359, 362 (Ind. Ct. App. 2001).

The defendants argue that Jackson failed to meet the procedural requirements of the ITCA because he never gave proper notice to the Town of Munster, the Town Council, or Officer Reillo. Notice under the ITCA "must describe in a short and plain statement the facts on which the claim is based. The statement must include the circumstances which brought about the loss, the extent of the loss, the time and place the loss occurred, the names of all persons involved if known, the amount of the damages sought, and the residence of the person making the claim at the time of the loss and at the time of filing the notice." **I.C. § 34–13–3–10**. In response, Jackson concedes that he failed to satisfy the notice requirement set forth in the ITCA. However, Jackson requests that the court grant him an "exception to the rule of law for [the ITCA] due to the preponderance of all of the facts." [DE 117].

The court lacks authority to unilaterally waive the notice requirements required by the ITCA. Because Jackson admittedly failed to satisfy the notice requirement, the defendants are

11

entitled to summary judgment as to his claims under the ITCA, which includes Jackson's negligence claim.

That said, the court does not believe that the ITCA expressly relates to Jackson's claims brought under the Indiana Constitution. *See, e.g.*, **Hoagland v. Franklin Twp. Cmty. Sch. Corp.**, 10 N.E.3d 1034, 1040 (Ind. Ct. App. 2014) ("[I]n light of the ITCA's express language, we conclude that the ITCA does not govern Hoagland's state constitutional claim."), aff'd in part, vacated in part, 27 N.E.3d 737 (Ind. 2015); **Baker v. Wash. Bd. of Works**, No. IP 99-0642- C-T/G, 2000 WL 33252101, at *7 (S.D. Ind. June 8, 2000) ("It is unclear whether the Indiana courts would require a tort claim notice be filed with respect to state constitutional claims. . . . In the absence of any such authority, the court declines to impose such a requirement in this case.").

Nevertheless, the Indiana Constitution does not support private rights of action for civil damages. "Indiana and federal courts have consistently declined to find an implied right of action for damages under the Indiana Constitution." **Caldwell v. Malave**, No. 2:19 CV 116, 2020 WL 887742, at *3 (N.D. Ind. Feb. 21, 2020). *See also, e.g.*, **City of Indianapolis v. Cox**, 20 N.E.3d 201, 212 (Ind. Ct. App. 2014) ("[N]o Indiana court has explicitly recognized a private right of action for monetary damages under the Indiana Constitution.") (quoting **Smith v. Ind. Dep't of Corr.**, 871 N.E.2d 975, 985 (Ind. Ct. App. 2007)); **Ball v. City of Indianapolis**, 760 F.3d 636, 645 (7th Cir. 2014) (noting that Indiana has yet to recognize a civil remedy for violating the Indiana Constitution).

To the extent that Jackson seeks injunctive relief against the defendants in their official capacities, the Eleventh Amendment forbids federal courts from exercising jurisdiction over claims for injunctive relief against state officials based on state law. **Pennhurst State Sch. & Hospital v. Halderman**, 465 U.S. 89, 102, 106 (1984) ("a suit against state officials that is in fact

a suit against a State is barred regardless of whether it seeks damages or injunctive relief"); *see also* **Higgins v. Mississippi**, 217 F.3d 951, 954 (7th Cir. 2000) ("a federal court can raise an Eleventh Amendment defense on its own initiative").

Thus, to the extent that Jackson is seeking monetary or injunctive relief, the defendants are entitled to summary judgment as to Jackson's claims under the Indiana Constitution.

D. ***The Fourteenth Amendment Claim***

"The Equal Protection Clause of the Fourteenth Amendment commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws.'" **Srail v. Vill. of Lisle**, 588 F.3d 940, 943 (7th Cir. 2009) (quoting **U.S. Const. amend. XIV**). "The Equal Protection Clause grants to all Americans 'the right to be free from invidious discrimination in statutory classifications and other governmental activity.' When a state actor turns a blind eye to the Clause's command, aggrieved parties...can seek relief pursuant to 42 U.S.C. § 1983." **Nabozny v. Podlesny**, 92 F.3d 446, 453 (7th Cir. 1996) (quoting **Harris v. McRae**, 448 U.S. 297, 322, 100 S. Ct. 2671, (1980)).

To prevail on his equal protection claim, Jackson must prove that Officer Reillo "treated him differently from persons [not in his protected class] and that [Officer Reillo] did so purposefully." **Xiong v. Wagner**, 700 F.3d 282, 295 (7th Cir. 2012) (internal quotation omitted). In other words, "[t]o establish liability for an equal protection violation, a plaintiff must establish that the defendant acted with a discriminatory purpose and discriminated against him because of his membership in an identifiable group." **Dunnet Bay Const. Co. v. Borggren**, 799 F.3d 676, 697 (7th Cir. 2015).

To prove discriminatory effect, Jackson must show that he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was

treated differently from members of the unprotected class. *See **Greer v. Amesqua***, 212 F.3d 358, 370 (7th Cir. 2000). Jackson, who is African American and thus a member of a protected class, claims that Officer Reillo's decision to conduct a traffic stop was motivated by a personal racial animus. That said, Jackson failed to show that Officer Reillo treated him differently than other similarly situated individuals by either naming others or using relevant statistics to create a reasonable inference that he was treated differently. Thus, Jackson has failed to prove Officer Reillo's actions had a discriminatory effect on him.

Even if Jackson had proven discriminatory effect, he still would have needed to prove discriminatory intent to establish a violation of the equal protection clause. *See **Greer v. Amesqua***, 212 F.3d 358, 370 (7th Cir. 2000). To do so, Jackson must show that Officer Reillo "acted with discriminatory purpose." ***Podlesny***, 92 F.3d at 453 (7th Cir.1996). "'Discriminatory purpose' ... implies more than ... intent as awareness of consequences. It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of' ... its adverse effects upon an identifiable group.'" ***McCleskey v. Kemp***, 481 U.S. 279, 298, 107 S. Ct. 1756 (1987) (quoting ***Pers. Adm'r of Mass. v. Feeney***, 442 U.S. 256, 279, 99 S. Ct. 2282 (1979)).

Jackson tries to establish discriminatory intent by assigning his own interpretation of Officer Reillo's motivation in conducting the traffic stop. Jackson asserts that Officer Reillo conducted the traffic stop only because he is an African American male. But Jackson only has offered his speculation, without evidence, to prove discriminatory intent. Jackson has proffered no evidence of racial animus by Officer Reillo, such as the use of racially derogatory language during the traffic stop or relevant statistical data that alludes to discriminatory intent. In turn, Jackson has not met his burden of showing that Officer Reillo or any other officer from the

Munster Police Department purposefully discriminated against him. Thus, the defendant is entitled to summary judgment as to Jackson's Fourteenth Amendment claim.

E. *The Munster Police Department Defendant*

As a final matter, the United States Supreme Court has instructed that local government liability under § 1983 "is dependent on an analysis of state law." ***McMillian v. Monroe County****,* 520 U.S. 781, 786, 117 S. Ct. 1734, 138 L.Ed.2d 1 (1997). Under Indiana law, a "[m]unicipal corporation" is a "unit, ... or other separate local governmental entity that may sue and be sued." Ind. Code § 36–1–2–10. A "'[u]nit' means county, municipality, or township," Ind. Code § 36–1–2–23, and a "[m]unicipality" is a "city or town," Ind. Code § 36–1–2–11. "Thus, the Indiana statutory scheme does not grant municipal police departments the capacity to sue or be sued." ***Sow v. Fortville Police Department***, 636 F.3d 293, 300 (7th Cir. 2011) citing ***Martin v. Fort Wayne Police Dep't****,* 2010 WL 4876728, at *3 (N.D. Ind. 2010). Consequently, the Munster Police Department must be dismissed from this action.

## *Conclusion*

Based on the foregoing reasons, the defendants' Motion for Summary Judgment [DE 108] is **GRANTED** as to Jackson's *Monell* (Count II), Fourteenth Amendment, Indiana Constitution (Count III) and Negligence claims (Count IV)**.** The motion is **DENIED** as to Jackson's Fourth Amendment claims (Count I).

The defendant Munster Police Department is **DISMISSED**.

ENTERED this 2nd day of May, 2024.

/s/ Andrew P. Rodovich
United States Magistrate Judge